# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RICKEY GRAY SHORE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:15CV653 |
| ) | |
| FRANK L. PERRY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved for dismissal on grounds of untimeliness. (See Docket Entry 6; see also Docket Entry 7 (Supporting Brief).) For the reasons that follow, the Court should grant Respondent's Motion to Dismiss and should dismiss the Petition as time-barred.

## I. Background

On September 1, 1992, Petitioner pleaded guilty in the Superior Court of Yadkin County to three counts of first degree sex offense and three counts of indecent liberties with a child, whereupon (pursuant to a plea agreement) he received consecutive prison sentences of life and ten years in case numbers 92CRS810, 92CRS811, and 92CRS812. (Docket Entry 1, ¶¶ 1-6; see also id. at 16-19; Docket Entry 7-2 at 2-7.)[1] The court ordered those

---

[1] The Petition consists of 15 pages of a standard form, followed by 43 pages of materials from Petitioner's underlying state criminal case(s). (See Docket Entry 1.) This Memorandum Opinion cites to the standard form portion of
(continued...)

sentences to "begin at the expiration of the sentence imposed [on] . . . 4-8-92[ in case number] 91 CRS 16453[ in] Guilford County Superior Court." (Id. at 16; see also id., ¶¶ 1, 2 (acknowledging conviction in "Guilford County Superior Court" in case number "91CRS16453" on "4-8-92"); Docket Entry 7-2 at 8-9 ("Judgment and Commitment" dated April 8, 1992, from Guilford County Superior Court, documenting Petitioner's receipt of 15-year prison sentence in case numbers 91CRS16453, 91CRS16454, and 91CRS16455, for "Crime against Nature," "Indecent Liberties," and "2nd Degree Sexual Offense").) Subsequently (on January 19, 1995), Petitioner received a consecutive 40-year prison sentence, upon his no contest pleas in Yadkin County Superior Court to three counts of second degree sex offense and one count of indecent liberties with a child in case numbers 94CRS2601, 94CRS2602, 94CRS2603, and 94CRS2604. (Docket Entry 7-2 at 12-15; see also Docket Entry 1, ¶ 3 (reporting 40-year consecutive sentence, but without reference to case numbers 94CRS2601, 94CRS2602, 94CRS2603, and 94CRS2604).)

---

[1](...continued)
the Petition by paragraph and to the remainder of the Petition by the page number in the footer appended at the time of docketing in the CM/ECF system. Respondent also attached to his Supporting Brief documents from Petitioner's state criminal proceedings. (See Docket Entry 7-2.) This Memorandum Opinion cites to those items by the page number in their CM/ECF footers. The judgment submitted by Petitioner from the above-referenced cases lists two counts of indecent liberties, but the related plea agreement he tendered identifies three such counts. (Compare Docket Entry 1 at 16, with id. at 18.) That judgment also mentions only the life sentence (see id. at 16), although the plea agreement contemplates two sentences (see id. at 19), as the Petition alleges (see id., ¶ 5). Respondent's submissions (the authenticity of which Petitioner did not contest upon responding (see Docket Entries 9, 10)) resolve any discrepancy, as they include not only the same judgment Petitioner filed with his Petition (compare Docket Entry 1 at 16-17, with Docket Entry 7-2 at 2-3), but also an additional judgment covering the third count of indecent liberties, which memorializes the ten-year consecutive prison sentence (Docket Entry 7-2 at 4-5).

Petitioner did not directly appeal those convictions. (See Docket Entry 1 at 25 (alleging in Motion for Appropriate Relief as to case numbers 91CRS16453, 92CRS810, 92CRS811, 92CRS812, 94CRS2601, and 94CRS2604, dated as signed on December 12, 2014, that Petitioner suffered unconstitutional denial of right to appeal); see also Docket Entry 9 at 3 ("[Petitioner] requested [his counsel] to file notice of appeal [but his] attorney[s] did not[.]"); Docket Entry 10 at 13 ("Petitioner [sic] court appointed attorney's [sic] . . . told Petitioner that he could not appeal a guilty plea when Petitioner requested that he file an appeal."), 14 ("Petitioner contends that his trial counsel's failure to perfect his appeal, or to advise him how to perfect an appeal pro se deprived him of his constitutional rights . . . .").)[2] Nor did Petitioner make any state (or federal) collateral filings until 1998. (See Docket Entry 1, ¶¶ 9, 11, 14.)

Petitioner instituted this action via his Petition dated as signed on August 3, 2015. (Id., Decl. ¶.) Respondent moved to dismiss the Petition as untimely (Docket Entry 6) and Petitioner responded (Docket Entries 9, 10).

## II. Grounds for Relief

The Petition presents <u>four</u> grounds for relief. (Docket Entry 1, ¶ 12.) The first alleges unspecified violations of Petitioner's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to

---

[2] Petitioner's filings do not consistently follow standard capitalization conventions, but (for ease of reading) this Memorandum Opinion utilizes such conventions when quoting his filings. In the Petition, Petitioner checked the "Yes" box as to whether he filed a direct appeal (Docket Entry 1, ¶ 8), but, in response to further questions about any such appeal, he identified only state collateral filings (see id., ¶ 9).

-3-

the United States Constitution.  (Id., ¶ 12(Ground One)(a); see also Docket Entry 10 at 2-5 (describing "Ground One" as raising Miranda violation).)  The second asserts that Petitioner suffered a "violation of Miranda rights" because he "was coerced into signing a waiver of . . . his Miranda rights based on the self-serving advice that he received from the detectives that he did not need and [sic] attorney[.]" (Docket Entry 1, ¶ 12(Ground Two)(a).) The third states that Petitioner's counsel provided ineffective assistance by "not present[ing] any evidence in Petitioner [sic] favor to the court that the victim . . . never had [an] examin[ation] by a doctor [which] would have shown that [the victim] was never rape[d] . . . ." (Id., ¶ 12(Ground Three)(a).) The fourth contends the state court improperly failed to afford Petitioner a competency hearing.  (Id., ¶ 12(Ground Four)(a).)[3]

### III.  Discussion

Respondent requests dismissal of this action because Petitioner filed the Petition outside the one-year limitation

---

[3] One of Petitioner's filings responding to Respondent's Motion to Dismiss contains subheadings for "Ground Five," "Ground Six," and "Ground Seven," but the related discussion (with the exception of an allegation of ineffective assistance regarding appeal) does not identify any collateral claims; instead, Petitioner therein argues, as to Grounds One through Four, that (A) he qualifies for federal habeas relief even under the limited review standard established by 28 U.S.C. § 2254(d)(2), (B) the Teague bar does not preclude federal habeas relief, (C) "extraordinary circumstances" warrant relaxation of the statute of limitations, and (D) the Court should deny Respondent's Motion to Dismiss and should allow Petitioner's responsive filings to exceed the page limitation. (See Docket Entry 10 at 11-17.) Petitioner's other responsive filing also purports to broaden his ineffective assistance claim beyond the allegations of Ground Three. (See Docket Entry 9 at 3 (complaining that Petitioner's counsel "failed to do any pretrial investigation before [Petitioner] accepted the plea," "fail[ed] to do any presentence investigation [resulting in] prejudic[e] because no potential mitigating evidence [was] presented even though such evidence existed," "failed to hiier [sic] an investigator to investigate [the victim]," and failed to carry out Petitioner's request "to file notice of appeal").)

period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"), codified in pertinent part at 28 U.S.C. § 2244(d)(1). (See Docket Entry 6.)[4] In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

For purposes of subparagraph (A), the one-year federal habeas limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration

---

[4] The AEDPA amendments apply to all petitions filed under § 2254 after April 24, 1996. Lindh v. Murphy, 521 U.S. 320 (1997).

of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because (as shown in the Background section) Petitioner did not pursue a direct appeal of his state convictions, the last of those convictions (entered on January 19, 1995, as the Background section documents) became final on or about February 2, 1995 (i.e., 14 days after the entry of judgment). See N.C. R. App. P., Rule 4(a)(2) (providing that appeal rights expire 14 days after the trial court enters judgment). In other words, Petitioner's underlying state convictions all became final before the time limits in AEDPA took effect on April 24, 1996; as a result, he had one year from AEDPA's effective date (i.e., until April 24, 1997) to seek relief via Section 2254. Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000). Petitioner, however, did not file the instant Petition until more than 18 years after that date, rendering the claims therein untimely under subsection (A).[5]

As noted above, in some situations, the limitations period under AEDPA starts running at times other than the one provided by subsection (A), i.e.: the date of the removal of an unlawful state-created impediment to filing, 28 U.S.C. § 2244(d)(1)(B); the

---

[5] Petitioner did file a motion for appropriate relief ("MAR") in state court in 1998 (and again in 2014). (See Docket Entry 1, ¶¶ 9, 11; see also id., ¶ 18 (responding to directive requiring explanation for "why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition" as follows: "the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection").) The pendency of proper state collateral filings does toll AEDPA's filing deadline. See Taylor v. Lee, 186 F.3d 551, 561 (4th Cir. 1999). However, once the time to institute a federal habeas action has expired, new collateral actions in state court do not restart the AEDPA limitations period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Petitioner's filing of an MAR in 1998 (or later) thus does not affect the timeliness of his Petition.

-6-

date of recognition by the United States Supreme Court of a constitutional right made retroactively applicable on collateral review, 28 U.S.C. § 2244(d)(1)(C); and/or the date on which the discovery of the factual predicate for a claim first reasonably could have occurred, 28 U.S.C. § 2244(d)(1)(D). Petitioner's responses to Respondent's Motion to Dismiss arguably request application of the delayed accrual provisions that concern state-created impediment(s) (subparagraph (B)) and newly-recognized, retroactive Supreme Court rulings (subparagraph (C)).

Specifically, in an apparent attempt to invoke subparagraph (B), Petitioner has opposed dismissal of his claims by "contend[ing] that the [prison] administration wouldn't allow inmates to make legal copies for their material [and] that [such conduct by state officials] hindered him from filing before his statute of limitation ran out." (Docket Entry 10 at 15; see also id. (noting, consistent with language of subparagraph (B), that tolling of limitations period occurs "when [the petitioner] has been unable to assert claims because of wrongful conduct of state").) Such "conclusory allegation[s] do[] not suffice to show delayed accrual under section 2244(d)(1)(B)." Kiesz v. Spearman, No. CV 13-5674-PA(E), 2014 WL 462864, at *3 (C.D. Cal. Feb. 4, 2014) (unpublished); see also United States v. Coates, No. 2:09CR8, 2014 WL 460934, at *2 (W.D. Va. Feb. 5, 2014) (unpublished) ("[The petitioner] asserts that he could not file a timely § 2255 motion because prison authorities denied him access to pen, paper, and legal papers . . . . These vague and conclusory allegations are

insufficient to demonstrate that any impediment created by governmental action in violation of the Constitution prevented [him] from preparing an earlier § 2255 motion, and, therefore, I cannot find that his motion is timely under § 2255(f)(2) [which mirrors § 2244(d)(1)(B)]." (internal ellipsis and quotation marks omitted)); Broussard v. Warden, S. La. Corr. Ctr., No. 2:11CV1757, 2012 WL 3067599, at *4 (W.D. La. July 9, 2012) (unpublished) ("[The p]etitioner implies that he is entitled to the benefits of 28 U.S.C. § 2244(d)(1)(B) . . . [because, inter alia, prison] staff block and delay incoming and outgoing mail . . . . [These] conclusory allegations do not establish the existence of a State created impediment to filing."), recommendation adopted, 2012 WL 3067596 (W.D. La. July 27, 2012) (unpublished).

As to subparagraph (C), Petitioner has cited the Supreme Court's decisions in Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376 (2012), and Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399 (2012). (See Docket Entry 9 at 2.) "These cases fail to warrant belated commencement under 28 U.S.C. § 2244(d)(1)(C) for newly recognized constitutional rights because Lafler and Frye 'simply discussed the constitutional right to effective assistance of counsel in the context of plea bargaining that defendants have enjoyed for decades.'" Tory v. Methena, No. 3:12CV905, 2013 WL 5739790, at *3 (E.D. Va. Oct. 22, 2013) (unpublished) (quoting Harris v. Smith, No. 1:13-cv-182-FDW, 2013 WL 3329050, at *1 (W.D.N.C. July 2, 2013) (unpublished), appeal dismissed, 548 F. App'x 79 (4th Cir. 2013), which in turn cites In re Perez, 682 F.3d

-8-

930 (11th Cir. 2012), and In re King, 697 F.3d 1189 (5th Cir. 2012)), appeal dismissed, 553 F. App'x 305 (4th Cir.), cert. denied, ___ U.S. ___, 134 S. Ct. 1564 (2014); accord, e.g., Diaz v. Biter, No. CV 13-7745-SP, 2014 WL 3109849, at *4 (C.D. Cal. July 8, 2014) (unpublished), certificate of appealability denied, slip op. No. 14-56534 (9th Cir. May 7, 2015); see also In re Graham, 714 F.3d 1181, 1182 (10th Cir. 2013) ("[E]very circuit court to consider the question has held that Frye and Lafler do not establish a new rule of constitutional law."). In any event, even if Lafler and Frye (issued on March 21, 2012) re-started the AEDPA limitations period as to any claim(s) in the instant Petition, Petitioner did not thereafter file any state collateral action (let alone the instant Petition) within a year of those rulings. (See Docket Entry 1, ¶ 11(a)(3) (giving filing date of December 18, 2014, for only state collateral filing since litigation of initial Motion for Appropriate Relief in 1998 (see id., ¶ 9)); see also id., Decl. ¶ (dating Petition as signed on August 3, 2015).)[6]

---

[6] Nor does subparagraph (D)'s delayed accrual provision render any of Petitioner's claims timely. The factual predicates for the claims in Grounds One through Four of the instant Petition all arise from matters that occurred (and, through the exercise of due diligence, Petitioner could have discerned) no later than the day the state court entered judgment. Specifically, by the time he pleaded guilty, Petitioner knew or reasonably should have known about (A) his waiver of Miranda rights and any related statements made to him by officers (Grounds One and Two), (B) his attorneys' failure to present evidence as to the lack of a medical examination of the victim (Ground Three), and (C) the absence of a competency examination (Ground Four). Accordingly, subparagraph (D) does not yield a later commencement date for those claims than does subparagraph (A). Likewise, even if the Court treated the additional allegations of ineffective assistance referenced in Petitioner's responses to Respondent's Motion to Dismiss (described in Footnote 3) as properly-presented claims, the commencement date for those claims under subparagraph (D) would remain (at best) coterminous with the date under subparagraph (A), as to all such claims other than appellate ineffectiveness. In that regard, by exercising due diligence, Petitioner could have known, at the time the state court entered judgment, what pretrial and/or
(continued...)

In sum, Petitioner's claims run afoul of AEDPA's time-bar. Petitioner nonetheless would have the Court permit this action to proceed because "there were extraordinary circumstances, such as events which were both beyond his control and unavoidable . . . [that] prevented him . . . from exercising his rights." (Docket Entry 10 at 13.) The Supreme Court has deemed equitable tolling available in the federal habeas context. Holland v. Florida, 560 U.S. 631 (2010). More particularly, a court may relax AEDPA's statute of limitations when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Petitioner, however, has not made such a showing.

To the contrary, in arguing for equitable tolling, Petitioner has focused on the failure of his attorneys to pursue (or to advise him about) a direct appeal. (See Docket Entry 10 at 13-15.) That line of argument entitles Petitioner to no relief from AEDPA's statute of limitations because the absence of a direct appeal did

---

⁶(...continued)
presentence investigation his attorneys had done and whether they had hired an investigator. As to ineffective assistance on appeal, Petitioner knew what (if any) consultation he received about an appeal at the time of entry of judgment and in the 14 days that followed (during which he had to file any appeal). Similarly, through the exercise of due diligence, Petitioner could have learned that his attorneys had not perfected an appeal of his convictions sometime during the year and three-plus months that passed between the last entry of judgment on January 19, 1995, and AEDPA's effective date of April 24, 1996. See Escamilla v. United States, Nos. 1:10CR175-2, 1:13CV509, 2015 WL 248562, at *2 (M.D.N.C. Jan. 20, 2015) (unpublished) (discussing cases recognizing that failure of petitioners to take steps to inquire into status (or lack) of appeal for lengthy period of time terminates delay in commencement of limitations period under provision of 28 U.S.C. § 2255(f) that parallels subparagraph (D)). Accordingly, even on that appellate ineffective assistance of counsel claim, under subparagraph (D), Petitioner's one-year limitations period for filing a federal habeas action would have lapsed no later than April 24, 1997.

not affect his ability to file a habeas action in this Court (or, at least, to institute state collateral proceedings that would have tolled the federal filing deadline) before April 24, 1997, particularly given that, through the exercise of due diligence, he could have discovered the lack of a direct appeal sometime between the entry of judgment on the last of his convictions (on January 19, 1995) and AEDPA's effective date (of April 24, 1996). See, e.g., Randle v. Crawford, 604 F.3d 1047, 1058 (9th Cir. 2010) ("Counsel's failure to perfect an appeal simply meant that the petitioner had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action — it did not prevent him from filing the petition." (internal brackets omitted)); Schmitz v. Taylor, No. 5:14-3626, 2014 WL 6810384, at *3 (D.S.C. Dec. 2, 2014) (unpublished) ("[A]llegedly ineffective assistance of counsel based on the failure to file an appeal does not constitute an 'extraordinary circumstance' that would justify equitable tolling when the failure to appeal had been public knowledge and could have been discovered through the exercise of reasonable diligence."); Geary v. Warden, N.H. State Prison, No. 07CV116PS, 2008 WL 2782830, at *1 (D.N.H. July 8, 2008) (unpublished) ("[The petitioner] also claims that he is entitled to equitable tolling because his attorney provided ineffective assistance in failing to appeal his conviction in state court. This argument is also without merit. Counsel's alleged failure to pursue an appeal in state court did not prevent [the petitioner] from filing a timely habeas corpus petition in this court.").

## IV. Conclusion

The statute of limitations established by AEDPA bars Petitioner's claims.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 6) be granted, that the Petition (Docket Entry 1) be dismissed, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

                                /s/ L. Patrick Auld
                                 **L. Patrick Auld**
                           **United States Magistrate Judge**

June 22, 2016